UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

JUVENTINO RAUL CONTRERAS-MEJIA,

Petitioner,

v.

BRUCE SCOTT, et al,

Respondents.

Case No. 2:26-cv-03091-TMC

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS

## I. INTRODUCTION AND BACKGROUND

Petitioner Juventino Raul Contreras-Mejia is a 46-year-old citizen of Mexico who has lived continuously in the United States for over two decades. Dkt. 11 at 3. He has four children who are United States citizens and has lived at the same address in Mount Vernon, Washington for approximately 15 years. *Id.* He has worked steadily, paid taxes, and has no criminal history. *Id*. at 4.

On July 12, 2026, Immigration and Customs Enforcement ("ICE") agents arrested Petitioner after encountering him while he was in his minivan near his home. According to the testimony at Petitioner's bond hearing—a recording of which was provided by Respondents—ICE agents approached the driver's side window, told Petitioner that they had a warrant for his arrest, and asked him to exit the minivan. Dkt. 17 at 5:00-20:00. Petitioner hesitated and asked to

see the warrant. *Id.* ICE agents did not produce the warrant and instead broke the glass as Petitioner started to roll down his window. *Id.* They handcuffed Petitioner and took him into custody. *Id.* Since that date, Petitioner has been detained at the Northwest ICE Processing Center in Tacoma, Washington.

On August 27, 2026, Petitioner had a bond hearing before an Immigration Judge ("IJ"). After hearing testimony from Petitioner and argument from counsel, the IJ concluded that Petitioner had not met his burden of showing that he was not a flight risk and denied bond. Dkt. 14 at 7. But the IJ's written order does not reflect this conclusion. Dkt. 10-1. Instead, it contains no basis for denying bond, as neither the box marked "flight risk" nor the one marked "danger" is checked. *Id.* The parties agree, however, that the IJ's conclusion at the bond hearing seemed to be that Petitioner failed to show he was not a flight risk. Dkt. 14 at 7; Dkt. 18 at 4. Petitioner reserved the right to appeal the IJ's decision but it is unclear whether he has done so. Dkt. 14 at 3.

On August 28, 2026, Petitioner filed a petition for a writ of habeas corpus. Dkt. 1. At the time of that filing, habeas counsel for Petitioner was unaware that her client had just been denied bond. After learning of that hearing, she filed an amended petition on September 16 challenging the denial of bond as an abuse of discretion. Dkt. 11. On September 30, Respondents filed a return to the habeas petition. Dkt. 14. On October 5, Petitioner filed a traverse. Dkt. 18. The habeas petition is now ready for review. For the reasons set forth below, the Court GRANTS the petition for writ of habeas corpus.

## II. LEGAL STANDARD

"Writs of habeas corpus may be granted by . . . the district courts . . . within their respective jurisdictions." 28 U.S.C. § 2241(a). Habeas petitioners must prove by the preponderance of the evidence that they are "in custody in violation of the Constitution or laws

or treaties of the United States." *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004); 28 U.S.C. § 2241(c).

## III. DISCUSSION

### A. Prudential exhaustion is not required.

Ordinarily, before turning to federal court, a litigant must first pursue all options available through the appropriate administrative agency. *See, e.g.*, *Leonardo v. Crawford*, 646 F.3d 1157, 1160 (9th Cir. 2011). Respondents argue that Petitioner has failed to exhaust his administrative remedies and the Court should deny his petition on exhaustion grounds. Dkt. 14 at 4–6. Petitioner contends that the Court should waive the exhaustion requirement "because further administrative review cannot timely or effectively remedy [his] injury. . . . *See Laing v. Ashcroft*, 370 F.3d 994, 997–1001 (9th Cir. 2004)." Dkt. 18 at 9.

The Court agrees with Petitioner. First, in a habeas proceeding, "[t]he exhaustion requirement is prudential, rather than jurisdictional." *Hernandez v. Sessions*, 872 F.3d 976, 988 (9th Cir. 2017). Exhaustion may be excused "where administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void," *S.E.C. v. G.C. George Sec., Inc.*, 637 F.2d 685, 688 n.4 (9th Cir. 1981) (emphasis added); *see also Vasquez-Rodriguez v. Garland*, 7 F.4th 888, 896 (9th Cir. 2021) ("[W]here the agency's position appears already set and recourse to administrative remedies is very likely futile, exhaustion is not required." (citation modified)).

Here, requiring Petitioner to wait until an appeal to the BIA is resolved would unreasonably prolong his detention and likely prove futile. As this Court once observed, the average time for an appeal to be resolved by the BIA was 204 days in 2024 (before the current surge in immigration detention). *Rodriguez Vazquez v. Bostock*, 802 F. Supp. 3d 1297, 1307

(W.D. Wash. 2025), *aff'd*, 183 F.4th 1160 (9th Cir. 2026). Respondents argue that "the mere passage of time or the delay inherent in the administrative process is insufficient to establish the type of unique, irreparable harm necessary to waive prudential exhaustion." Dkt. 14 at 6. But Respondents fail to acknowledge that the harm suffered by Petitioner is not merely the passage of time. It is the passage of time while separated from family, employment, and the opportunity to better prepare for immigration proceedings. Numerous federal courts have found irreparable harm where lengthy processing times would substantially prolong a petitioner's detention. *See, e.g.*, *W.T.M. v. Bondi*, No. 2:25-cv-02428-RAJ-BAT, 2026 WL 262583, at *3 (W.D. Wash. Jan. 30, 2026); *Soriano v. Hernandez*, 830 F. Supp. 3d 1071, 1079 (W.D. Wash. 2026); *Garcia Miranda v. Hernandez*, No. 2:26-cv-00906-JNW, 2026 WL 1328227, at *3 (W.D. Wash. May 13, 2026).

**B. The IJ abused his discretion by denying bond.**

The Court's review of a bond determination by an IJ is limited. While factual questions are unreviewable, a district court may review a habeas challenge to an IJ's application of a legal standard—such as dangerousness or risk of flight—to determine "whether an IJ correctly applied the [legal] standard to a given set of facts." *Martinez v. Clark*, 124 F.4th 775, 782 (9th Cir. 2024) (quoting *Wilkinson v. Garland*, 601 U.S. 209, 221 (2024)). While a court may not review underlying factual determinations such as "'credibility, the seriousness of a family member's medical condition, or the level of financial support a noncitizen currently provides,'" it may review mixed questions of law and fact, "even when [they] are primarily factual[.]" *Id*. at 782–84 (quoting *Wilkinson*, 601 U.S. at 225). Such determinations are reviewed for an abuse of discretion. *Martinez*, 124 F.4th at 784. Under abuse of discretion review, the Court "cannot reweigh evidence," but instead determines whether the immigration judge "applied the correct legal standard." *Id.* at 785.

Under BIA precedent, to determine whether a noncitizen is a danger to the community or a risk of flight, an IJ is supposed to weigh nine factors: (1) whether the noncitizen has a fixed address in the United States; (2) the noncitizen's length of residence in the United States; (3) the noncitizen's family ties in the United States, and whether they may entitle the noncitizen to reside permanently in the United States in the future; (4) the noncitizen's employment history; (5) the noncitizen's record of appearance in court; (6) the noncitizen's criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the noncitizen's history of immigration violations; (8) any attempts by the noncitizen to flee prosecution or otherwise escape from authorities; and (9) the noncitizen's manner of entry to the United States. *Id*. at 783 (citing *In re Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006)).

Here, the combination of the IJ's written order and the recorded hearing create a contradictory record that does not provide a reasoned explanation for the denial of bond or a rational application of the *Guerra* factors to the given set of facts. *See Tadevosyan v. Holder*, 743 F.3d 1250, 1253 (9th Cir. 2014) (holding that, in the context of an immigration appeal, the agency "abuses its discretion . . . when it fails to provide a reasoned explanation for its actions") (quoting *Movsisian v. Ashcroft*, 395 F.3d 1095, 1098 (9th Cir. 2005)).[1] The parties seem to agree in their briefing that the IJ denied bond based on risk of flight. But even that requires some degree of guesswork; in the recorded hearing, which is of poor quality, the IJ clearly says that he

[1] Respondents dispute the applicability of *Tadevosyan* because it applies the abuse of discretion standard to "the Board of Immigration Appeals." Dkt. 14 at 7. But Respondents provide no argument or authority for why the abuse of discretion standard would be different for one level of the immigration court system but not the other. And in *Martinez v. Clark*—the leading case applying that standard to habeas review of IJ bond determinations—the Ninth Circuit also cited cases arising from direct review of the BIA. *See Martinez*, 124 F.4th at 784 (citing *Konou v. Holder*, 750 F.3d 1120, 1127 (9th Cir. 2014)).

is not denying bond based on danger, but concludes somewhat equivocally that it is based on "the evidence that was presented or not presented in this case with respect to the charge." *See* Dkt. 17 at 26:30–27:00. Then, in his written order, the IJ checks neither danger nor flight risk, but instead the box for "other," with no further explanation. Dkt. 10-1.

Petitioner presented ample evidence to the IJ that he is not a flight risk, including his job, family ties, stable residence, U.S. citizen children, potential grounds for cancellation of removal, and long history of living in this country. *See* Dkt. 17 at 17:00–20:00. The questioning by both parties during Petitioner's testimony focused on Petitioner's five-minute encounter with ICE agents during which he hesitated to roll down his window while asking to see the warrant for his arrest. But the IJ made no credibility findings and did not appear to reject the Petitioner's characterization of events—Petitioner hesitated to get out of his vehicle and provide his ID while asking to see the warrant but made no attempt to flee by car or on foot. Neither the oral ruling nor the written order show a reasoned explanation for why this brief hesitation was not outweighed by Petitioner's substantial evidence showing his ties to the community and motivation to appear for court. While the IJ mentioned Petitioner's past use of false social security numbers to obtain employment, if this were sufficient for a flight risk finding, "any noncitizen applying for Cancellation of Removal who is unauthorized to work and who truthfully provides information about their employment history and tax return filings automatically is at risk of being found a flight risk." *Soriano v. Hernandez*, 830 F. Supp. 3d 1071, 1080–81 (W.D. Wash. 2026). And to the contrary, BIA authority provides that "a noncitizen *without* any employment history is a factor that militates against release on bond." *Id.* at 1081 (citing *Matter of R-A-V-P-*, 27 I. & N. Dec. at 805) (emphasis added).

In sum, the Court concludes that the IJ abused his discretion by (1) failing to produce a written order that included the basis for his decision; and (2) orally announcing a decision that

failed to give a reasoned explanation for how the *Guerra* standard applied to an uncontested set of facts. While the IJ was clearly attentive and engaged with the evidence, and the failure to create an adequate record may be the result of a high caseload or inadvertence, the Court must review the record it's given to "assess whether an IJ correctly applied the statutory standard to a given set of facts." *Martinez*, 124 F.4th at 783 (quoting *Wilkinson*, 601 U.S. at 221); *see also Movsisian*, 395 F.3d at 1098 (when the agency "fails to provide specific and cogent reasons for its decision, we are left without a reasoned decision to review"). As have many other courts in this district, the Court concludes that the appropriate remedy for this violation is release on bond.

**IV. CONCLUSION**

For the reasons explained above, the Court ORDERS as follows:

1. The petition for writ of habeas corpus (Dkt. 11) is GRANTED.

2. Within ONE day of this Order, Respondents must release Petitioner Juventino Raul Contreras-Mejia from custody with reasonable conditions of supervision.

3. Upon his release, Respondents must return to Petitioner any personal property, including any personal identification document (other than a passport) and any employment authorization document.

4. Respondents shall file a status report by October 26, 2026, confirming that Petitioner Juventino Raul Contreras-Mejia has been released.

Any fee petition should be filed within the deadlines set by the Equal Access to Justice Act, 28 U.S.C. § 2412. The parties are encouraged to meet and confer on any fee request before filing a petition.

Dated this 23rd day of October, 2026.

Tiffany M. Cartwright
United States District Judge